*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated,<br><br>Appellant,<br><br>v.<br><br>LTL MANAGEMENT LLC,<br><br>Appellee. | Civ. Action No. 22-cv-02856<br><br>OPINION |
| In Re:<br><br>LTL MANAGEMENT LLC<br><br>Debtor. | |

CASTNER, District Judge

**THIS MATTER** comes before the Court on appeal by the San Diego County Employees Retirement Association ("SDCERA" or "Appellant") from a decision by the United States Bankruptcy Court for the District of New Jersey. (ECF No. 1.) Shortly after the notice of appeal was filed, the parties agreed to a briefing schedule, which was entered by this Court on June 8, 2022. (ECF Nos. 15–16.) Now, Appellee LTL Management, LLC ("Appellee," "LTL Management," or "Debtor") moves for this Court to Stay the Briefing Schedule Pending a Ruling

1

by the Third Circuit Court of Appeals. (ECF No. 32.) For the reasons stated below, the Motion to Stay Briefing Pending a Ruling by the Third Circuit Court of Appeals is **GRANTED**.

I.  BACKGROUND

  A.  *The Securities Action*

On February 28, 2019, SDCERA filed its First Amended Complaint for violations of the Federal Securities Laws ("Securities Action"). (*Hall v. Johnson & Johnson, et al.*, Civ. No. 3:18-cv-01833 (D.N.J.) (hereinafter, "*Hall v. J&J*"), 1st Am. Compl. ¶¶ 434–445, ECF No. 33.) In the First Amended Complaint, SDCERA, as lead plaintiff, alleged that the defendants[1] in the Securities Action "engaged in a scheme to defraud investors and issued false and misleading statements in order to conceal the truth regarding the Company's talc and Baby Powder," specifically by intentionally concealing that Johnson & Johnson's talc and talcum powder products were contaminated with asbestos. (*Id.* ¶ 2.) SDCERA also alleged that "J&J had attempted to find ways to remove asbestos minerals from its talc; . . . J&J purposely avoided the use of testing methods that could detect the asbestos present in the Company's talc, and . . . J&J had influenced and manipulated regulators and scientists in order to protect the Company's flagship product and reputation." (*Id.*) In addition to the allegations that Johnson & Johnson knew that asbestos was present in their talc and talcum powder products, SDCERA asserted that Johnson & Johnson made several materially false and misleading statements and omissions during the time period of around February 2013 through around October 2018. (*Id.* ¶¶ 253–391.) According to SDCERA, the alleged false and misleading statements and omissions "maintained artificial inflation in the price

---

[1] Defendants in the Securities Action are Johnson & Johnson (also referred to as "J&J" or the "Company"), Alex Gorsky, Dominic Caruso, Sandra Peterson, Carol Goodrich, Joan Casalvieri, Ph. D., Michael Sneed, and Tara Glasgow (collectively, "Defendants"). (*Hall v. J&J*, 1st Am. Compl. ¶¶ 20–27, ECF No. 33.)

2

of J&J securities by misrepresenting and concealing the relevant truth about J&J's talc and talcum powder products." (*Id.* ¶ 419.) SDCERA asserts that the artificially inflated stock value "suffered statistically significant declines" after a series of disclosures about "the relevant truth about J&J's talc and attendant reputation and litigation risks." (*Id.* ¶¶ 420–421.)

On May 3, 2019, the defendants in the Securities Action filed a Motion to Dismiss. (*Hall v. J&J*, Mot. to Dismiss, ECF No. 44.) In a decision on December 27, 2019, this Court granted in part and denied in part the Motion to Dismiss. (*Hall v. J&J*, ECF Nos. 49–50.) After the decision on the Motion to Dismiss, the remaining parties began discovery, including the exchange of documents, written discovery, and depositions. (*See, e.g.*, *Hall v. J&J*, ECF Nos. 66, 72, 75–77, 86–88, 104, 114–117, 119–122, 138, 154–156; *see also* SDCERA's Opposition to LTL Management LLC's Mot. To Stay Proceedings In Case Pending Ruling By Third Circuit Court Of Appeals In Unrelated Bankruptcy Case (hereinafter, "Opp'n") 9, ECF No. 37.)

On March 7, 2022, in an adverse bankruptcy proceeding involving the same parties, LTL Management filed a motion before the Bankruptcy Court requesting that the Securities Action be preliminarily enjoined. (*See LTL Management LLC, v. San Diego County Employees Retirement Association, et al.*, Adv. Proc. No. 22-01073, Mot. for an Order (I) Preliminarily Enjoining the Prosecution of Putative Securities Class Action and (II) Granting a TRO Order Pending a Further Hearing, ECF No. 2.)[2] After a hearing on the Motion, the Bankruptcy Court granted LTL Management's Motion and stayed the Securities Action. (*See LTL Management LLC, v. San Diego County Employees Retirement Association, et al.*, Adv. Proc. No. 22-01073, Order Staying

---

[2] This motion came after the Bankruptcy Court entered an order in another bankruptcy matter staying product liability claims related to the alleged asbestos in Johnson & Johnson's talc and talcum powder products. (*See In re LTL Management, LLC*, Case No. 21-30589.) These product liability claims are discussed further *infra* Section II.B.

3

Securities Action, ECF Nos. 55.) SDCERA appealed the Bankruptcy Court's decision to this Court on May 13, 2022. (*In re LTL Management, LLC*, Civ. Case No. 3:22-cv-02856, ECF No. 1.)

      B.    *Talc Personal Injury Litigation*

In addition to the Securities Action, a number of product liability claims have been filed nationwide by those claiming to have sustained personal injuries as a result of using Johnson & Johnson's talc and talcum powder products (the "Talc Personal Injury Litigation"). (*See In re LTL Management, LLC*, Bankr. Case No. 21-30589, Informational Brief of LTL Management LLC, ECF No. 3, 124-126.) On October 14, 2021, as the Securities Action was being litigated, and as a result of the Talc Personal Injury Litigation, LTL Management filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 of the Bankruptcy Code. (*In re LTL Management, LLC*, Bankr. Case No. 21-30589, ECF No. 1.) Shortly thereafter, LTL Management filed a Motion requesting that the Bankruptcy Court enjoin the personal injury talc claimants from "prosecuting actions outside of the Chapter 11 Case." (*In re LTL Management, LLC*, Adv. Proc. No. 21-03032, ECF No. 2, 1.) In December 2021, the Official Committee of Talc Claimants and another interested party filed Motions to Dismiss the Chapter 11 Case. (*In re LTL Management, LLC*, Bankr. Case No. 21-30589, ECF Nos. 632, 766.)

Ultimately, the Bankruptcy Court denied the Motions to Dismiss. (*In re LTL Management, LLC*, Bankr. Case No. 21-30589, ECF Nos. 1572, 1603.) Shortly thereafter, the Bankruptcy Court granted LTL Management's Motion and prohibited the personal injury talc claims from being litigated "while the Chapter 11 Case remains pending." (*In re LTL Management, LLC*, Bankr. Case No. 21-30589, Order Granting LTL Management's Mot. 3, ECF No. 1635.) Several parties in interest in the Chapter 11 Case filed notices of appeal after the Bankruptcy Court denied the

4

Motions to Dismiss and stayed the Talc Personal Injury Litigation. (*See In re LTL Management, LLC*, Bankr. Case No. 21-30589, Notices of Appeal of Chapter 11 Case Dismissal Denial, ECF Nos. 1652, 1696, 1710, 1746); Notices of Appeal of Order Granting Stay of Talc Product Liability Litigation, ECF Nos. 1653, 1747, 1803; *In re LTL Management, LLC*, Adv. Proc. No. 21-03032, ECF Nos. 189, 190, 201.) The parties appealing the Bankruptcy Court's decision sought direct certification of their appeals to the Third Circuit. (*See In re LTL Management, LLC*, Bankr. Case No. 21-30589, Requests for Certification, ECF Nos. 1654, 1709, 1713, 1720.) The Bankruptcy Court certified the Appeals to the Third Circuit, and the Third Circuit accepted the petitions on May 11, 2022. (*In re LTL Management, LLC*, Bankr. No. 21-30589, ECF 1955; No. 22-2011 (3d Cir.), ECF Nos. 1-4.)

    C.    *The Appeals*

        1.    <u>Appeal of the Talc Personal Injury Litigation ("Plenary Appeal")</u>

After the Third Circuit accepted the appeals in the Talc Personal Injury Litigation, it consolidated the Appeals (hereinafter referred to as the "Plenary Appeal") and scheduled expedited briefing for the proceedings. (*In re LTL Management, LLC*, No. 22-2011 (3d Cir.), Order Consolidating Appeals and Setting Briefing Schedule, ECF No. 21-1.) Briefing in the Plenary Appeal is set to conclude by September 6, 2022. (*Id.*)

On June 30, 2022, Appellant Official Committee of Talc Claimants submitted its brief in the Plenary Appeal (the "TCC Brief"). (*Official Comm. of Talc Claimants v. LTL Management LLC (In re LTL Management LLC)*, No. 22-2003 (3d Cir.), TCC Brief, ECF No. 46.) According to the TCC Brief, in relevant part, the issues before the Third Circuit are: whether the Bankruptcy Court had "core" or "related-to" jurisdiction to enjoin cases against non-debtors (TCC Brief 45–57), specifically whether the Bankruptcy Court correctly applied *Pacor v. Higgins*, 734 F.2d 934

(3d Cir. 1984) and its progeny (*id.* 49–56); whether the Bankruptcy Court appropriately applied the automatic stay of section 362(a) of the Bankruptcy Code against non-debtors (*id.* 57–58); whether the Bankruptcy Court was correct to consider "record taint" as a basis for enjoining non-debtor lawsuits (*id.* 54–56); and whether the Bankruptcy Court used the appropriate standard for a finding of irreparable harm in granting the preliminary injunction (*id.* 58–61).

The Third Circuit has scheduled oral argument on the Plenary Appeal for September 19, 2022. (*In re LTL Management, LLC*, No. 22-2011 (3d Cir.), ECF No. 87.)

2. Appeal of the Securities Action (the "Securities Action Appeal")

On May 27, 2022, after filing its Notice of Appeal in the Securities Action, SDCERA filed its Designation of Record and Statement of Issues on Appeal (the "SDCERA Statement of Issues"). (*See generally* Designation of Rules and Statement of Issues on Appeal, ECF No. 14.) In relevant part, SDCERA asserts that the issues on appeal are as follows:

1. Did the Bankruptcy Court err in holding that it had jurisdiction over the Adversary Proceeding under 28 U.S.C. § 1334(b) [specifically noting whether there was "core" or "related to" jurisdiction]?

. . .

3. Did the Bankruptcy Court err in finding that under the principles set out in the Third Circuit opinion of *Pacor v. Higgins*, 734 F.2d 934 (3d Cir. 1984), the continued prosecution of the Securities Action could "conceivably affect" the administration of the Debtor's chapter 11 case?

4. Did the Bankruptcy Court err in holding that 11 U.S.C. §362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," provides a basis to stay the Securities Action when: (a) the Debtor is not a defendant in the Securities Action and is not liable to the plaintiff (Appellant here), (b) the defendants are non-debtor third parties who have no right to indemnity or contribution from the Debtor or its estate should the Securities Action be resolved against them, and are not employed by the Debtor, and (c) neither the plaintiff nor the

6

     proposed class it represents has asserted a claim against the Debtor or the estate?

5. Did the Bankruptcy Court err in holding that "unusual circumstances" existed to apply § 362(a)(3) to the Securities Action because if facts known to an affiliate of the Debtor were to be discovered or proven in the Securities Action, they could impact issues in the Debtor's reorganization?

6. Did the Bankruptcy Court err as a matter of law in enjoining the Securities Action pursuant to 11 U.S.C. § 105(a) based on the factual record before it?

   a. Did the Bankruptcy Court commit legal error by applying the wrong standard for establishing irreparable harm to grant an injunction under 11 U.S.C. § 105(a)?
   b. Did the Bankruptcy Court err in holding that the Debtor would be irreparably harmed should the continuation of the Securities Action result in the discovery or proof of facts known by an affiliate of the Debtor?
   c. Was there any factual support in the record before the Bankruptcy Court for its conclusions that continuation of the Securities Action would irreparably harm the Debtor, its estate or its reorganization, because: (i) facts might be discovered or proven in the Securities Action which could give rise to "record taint," and (ii) facts might be discovered or proven in the Securities Action which could "complicate and draw out the claims valuation process," "hinder mediation," and "weaken insurance coverage claims"?
   d. Did the Bankruptcy Court err in concluding that the possible discovery or proof of facts in the Securities Action which might be relevant to the Debtor's chapter 11 case was "imminent" for purposes of analyzing irreparable harm to grant an injunction – especially given Debtor's five-month delay in filing the Adversary Proceeding after filing for bankruptcy?

(*Id.* 4–5.)

     After Appellant submitted the SDCERA Statement of Issues, the parties submitted a joint letter to this Court indicating that the parties met, conferred, and agreed to a briefing schedule for the Appeal. (ECF No. 15.) On June 8, 2022, the Court entered the parties' agreed-upon briefing schedule, and ordered that the "briefing schedule shall be as follows: (1) Appellant's Brief shall

7

be due July 14, 2022 . . . ; (2) Appellee's Opposition shall be due August 30, 2022 . . . ; (3) Appellant's Reply shall be due September 27, 2022 . . . ." (Text Order Setting Briefing Schedule, ECF No. 16.)

On June 24, 2022, LTL Management filed a Motion to Stay the Briefing Schedule that was entered on June 8, 2022, pending a ruling by the Third Circuit in the Plenary Appeal. (Appellee's Motion to Stay Briefing Schedule Pending Ruling by Third Circuit Court of Appeals ("Motion to Stay" or "MTS") 11, ECF No. 32.) The crux of LTL Management's argument is that the briefing in the Securities Action Appeal should be stayed pending the resolution of the Plenary Appeal because "[r]egardless of their ultimate disposition, the Third Circuit's ruling in the expedited Plenary Appeal will have a profound impact on this Appeal." (MTS 8.) According to LTL Management:

> Reversal of either the Bankruptcy Court's Chapter 11 Dismissal Denial or the Talc Product Liability Litigation Stay Order could moot this Appeal, or at least render it irrelevant as a practical matter. Dismissal of the Debtor's entire Chapter 11 Case would extinguish all stays protecting the Debtor and nondebtor parties alike, including J&J, whether imposed automatically by operation of section 362 of the Bankruptcy Code or pursuant to orders of the Bankruptcy Court. Similarly, any reversal of the Talc Product Liability Litigation Stay Order by the Third Circuit could allow litigation of personal injury talc claims to resume. Because the primary purpose of the relief granted in the Securities Litigation Stay Order was avoiding litigation of talc-safety issues while such personal injury actions were stayed, reversal of the Talc Product Liability Litigation Stay Order could significantly impact that relief.
>
> If, as the Debtor anticipates, the Third Circuit upholds the Bankruptcy Court's Chapter 11 Dismissal Denial and Talc Product Liability Litigation Stay Order, the Third Circuit will likely opine on several issues directly relevant to this Appeal, including, for example: (a) the scope of the Bankruptcy Court's jurisdiction over nondebtor parties; (b) the Bankruptcy Court's authority to extend the automatic stay under section 362 of the Bankruptcy Code to nondebtors; and (c) the significance of potential "record taint" as a basis for staying actions involving nondebtor parties. In disposing of the Plenary

8

> Appeals, therefore, there is every possibility that the Third Circuit will provide valuable guidance for this Court on these issues. At a minimum, waiting for that guidance would avoid the risk of wasteful and duplicative litigation before this Court and the Third Circuit.

(*Id.* 8–9.)

SDCERA opposed the Motion to Stay on July 5, 2022. (Opp'n.) SDCERA asserts that the pending Plenary Appeal before the Third Circuit is "entirely unrelated" to the Securities Action Appeal. (*Id.* 13.) SDCERA asserts that it was not involved in either the Chapter 11 case or the earlier filed adversary proceeding and claims that the issues raised on appeal before the Third Circuit in those matters are "substantively different" from those at issue on appeal before this Court in the Securities Action. (*Id.*) SDCERA argues the basis for its appeal is that the Bankruptcy Court issued the injunction staying the Securities Action based on "potential 'record taint alone,'" which SDCERA asserts is an "unprecedented step." (*Id.* 14.) Further, SDCERA states that it intends to appeal the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334, asserting that the Bankruptcy Court adopted an overly expansive view of its jurisdiction. (*Id.* 14–15.) Finally, SDCERA argues that these issues are entirely dissimilar from the ones currently pending before the Third Circuit, which it claims "involve[s] entirely different parties, claims and issues." (*Id.* 15.)

SDCERA characterizes LTL Management's request to stay the briefing as a motion to stay the entire appeal, noting that LTL Management's motion to stay is a "transparent delay tactic" that could stay the appeal for an "indeterminate period." (*Id.* 1–2.) To that end, SDCERA asserts that LTL Management has not met the requirements to stay the Securities Action Appeal. (*Id.* at 17–25 (citing factors that courts consider when determining whether to stay an entire civil proceeding).)

LTL Management submitted its Reply on July 11, 2022. (Appellee's Reply in Support of

9

Motion to Stay Briefing Schedule Pending Ruling by Third Circuit Court of Appeals ("Reply") 11, ECF No. 39.) LTL Management notes that when a stay is requested pending the resolution of related litigation that would impact the present action, it should be granted. (Reply 8–9.) Further, LTL Management claims that the Third Circuit's decision to consider the Plenary Appeal in an expedited fashion indicates that the stay is not likely to be long. (*Id.* 7–8.) Finally, LTL Management attaches as exhibits both the TCC Brief and the SDCERA Statement of Issues, to support its argument that the issues on appeal in this Action and in the Plenary Appeal are sufficiently similar to warrant a stay. (ECF No. 39-1, ECF No. 39-2.)

## II.   ANALYSIS

The Federal Rules of Bankruptcy Procedure establish that "the court[,] for cause shown[,] may at any time in its discretion" enlarge any period of time specified by the Bankruptcy Rules, by motion, "if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order." Fed. R. Bankr. 9006 (b)(1). Further still, the Court may, "by order," adjust or modify an existing briefing schedule. Fed. R. Bankr. 8018(a).

This Court concludes that the Third Circuit's ruling on the Plenary Appeal will likely impact the Securities Action Appeal as there are substantially similar legal issues raised in both Appeals. Accordingly, the Court will grant the Motion to Stay the Briefing pending the Third Circuit's ruling and provide the limited procedural relief that has been requested by LTL Management. (*See generally* MTS.) Based on this Court's review of the TCC Brief and the SDCERA Statement of Issues, both Appeals raise issues related to the application of the automatic stay to non-debtors, whether the Bankruptcy Court correctly considered "record taint" in deciding

to enjoin non-debtors, and whether the Bankruptcy Court properly found irreparable harm.[3] (TCC Brief, SDCERA Statement of Issues, ECF No. 41.)

Regardless of the outcome of the Plenary Appeal in the Third Circuit, that decision will certainly be informative and perhaps even instructive, as this Court decides the Securities Action Appeal. SDCERA asks this Court to resolve several issues of law that are currently pending before a higher court. (*See* SDCERA Statement of Issues, ECF No. 41.) Moreover, the Third Circuit's decision could certainly impact the course of this Securities Action Appeal altogether should the Third Circuit lift the stay enjoining non-debtors.

The Third Circuit has set an expedited briefing schedule and has also scheduled oral argument for September 19, 2022. (*In re LTL Management, LLC*, No. 22-2011 (3d Cir.), ECF No. 87.) The Court finds that any prejudice to SDCERA is outweighed by the expedited process the Third Circuit has set forth in the Plenary Appeal, and the overlapping issues in both Appeals. To require briefing to continue despite the pending outcome of the Plenary Appeal would likely result in duplicative litigation before the Court and for the parties. As mentioned above, resolution of the appeal may narrow the issues for the parties or permit the parties to streamline their arguments.

**CONCLUSION**

For the reasons stated above, the Court will stay the briefing of the Securities Action Appeal Pending a Third Circuit decision in the Plenary Appeal. An appropriate order follows.

---

[3] Further, while this Motion to Stay was pending, SDCERA submitted its briefing on the merits of the pending bankruptcy appeal. (ECF No. 41.) While this Court will not substantively analyze the merits of the bankruptcy appeal at this time, SDCERA's briefing to this Court makes clear that they raise issues with the Bankruptcy's Court Subject Matter Jurisdiction (*id.* 10-16); the Bankruptcy Court's use of 11 U.S.C. §362(a)(3) (*id.* 16-20); the issue of "record taint," (*id.* 32-36); and the Bankruptcy Court's finding that LTL would face "irreparable harm" (*id.* 22-36), which are issues similar to those raised in the Plenary Appeal.

11

Date: <u>August 22, 2022</u>        */s/ Georgette Castner*
                                    GEORGETTE CASTNER, U.S.D.J.